# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| **RICKY LEE KETCHUM and DEBRA A. KETCHUM** | Cause No. **3:21 – cv – 304 – JD – MGG** |
| 575 O'Connor Rd. | |
| Oswego, NY 13126-5860 | Chief Judge Jon E. DeGuilio |
| | Magistrate Judge Michael G. Gotsch, Sr. |
| Plaintiffs, | |
| | |
| v. | **FIRST AMENDED COMPLAINT** |
| | |
| **THOR MOTOR COACH, INC.** | (Breach of Warranty) |
| c/o CT Corporation System | |
| 150 West Market Street, Ste. 800 | |
| Indianapolis, IN 46515, | |
| **CAMPING WORLD LEASING COMPANY, LLC, (d/b/a Camping World RV Sales),** | |
| 250 Parkway Drive, Ste. 270 | |
| Lincolnshire, Illinois 60069 | |
| **FREIGHTLINER CUSTOM CHASSIS CORPORATION,** | |
| c/o CT Corporation System | |
| 2 Office Park Court, Suite 103 | |
| Columbia, South Carolina 29223 | |
| **GOOD SAM ENTERPRISES, LLC,** | |
| 250 Parkway Drive, Ste. 270 | |
| Lincolnshire, Illinois 60069 | |
| Defendants. | |

---

## FIRST AMENDED COMPLAINT

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

1.      This case involves claims the Plaintiffs, Mr. Ricky Lee Ketchum and Mrs. Debra A. Ketchum ("the Ketchums"), assert against the Defendants, Thor Motor Coach, Inc. ("Thor"), Camping World Leasing Company, LLC ("Camping World"), Freightliner Custom Chassis Corporation ("Freightliner"), and Good Sam Enterprises, LLC ("Good Sam") under the New York State or Indiana Commercial Codes, the Magnuson – Moss Warranty Act, and the Indiana Deceptive Consumer Sales Act, IC §§ 24 – 5 *et seq.*, or the New York Deceptive Acts and Practices Statute, General Business Law § 349.

### PRELIMINARY STATEMENT

2.      This case concerns the Plaintiffs', Mr. Ricky Lee Ketchum and Mrs. Debra A. Ketchum ("the Ketchums"), purchase of a 2019 Thor Venetian J40 recreational vehicle for $225,000.00 from the Camping World Leasing Company, LLC (doing business as (*i.e.*, d/b/a) Camping World) location in Syracuse, New York. ("Camping World Syracuse").

3.      The Ketchums assert claims against the Defendants, Camping World Leasing Company, LLC ("Camping World"), Freightliner Custom Chassis Corporation ("Freightliner"), Good Sam Enterprises, LLC ("Good Sam"), and Thor Motor Coach, Inc ("Thor"), under the New York State or Indiana Commercial Code, the Magnuson – Moss Warranty Act, and the Indiana Deceptive Consumer Sales Act,

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

IC §§ 24 – 5 *et seq.*, or the New York Deceptive Acts and Practices Statute, General Business Law § 349 for actual, consequential, incidental, punitive, and statutory damages; costs; and attorney's fees, brought pursuant to the above – referenced causes of action.

4.     The Uniform Commercial Code (*i.e.*, UCC) claims brought here do not repeal earlier consumer protection laws.

5.     Rather, such statutes provide cumulative protection to buyers.

6.     Similarly, the preexisting UCC does not preempt subsequently enacted consumer protection laws.

7.     The Magnuson – Moss Warranty Act (*i.e.*, MMWA) does not invalidate or restrict any right or remedy of any consumer under State or any other Federal law.

8.     The statutory rights cumulation policy is important to consumers in three (3) respects:

a.     first, the policy means that consumer buyers are usually protected by two (2) or more different statutory schemes, which is significant because when one (1) statute does not provide a claim, the other one often does.

b.     second, this policy can give consumer buyers a variety of remedies. Although the UCC provides for cancellation of the sale and damages, consumer protection statutes often provide for statutory and multiple

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

damages and attorney fees.  Also, the UCC may not allow certain

remedies against remote manufacturers, but a lemon law or another state

consumer protection act may; and

c.     third, when there is an irreconcilable conflict between the statutes, the

more specific consumer protection statute usually will prevail over the

more general UCC.

9.    The MMWA, and consumer protection statutes generally, are remedial statutes

that are to be construed liberally to effectuate their purposes.

10.    State unfair and deceptive acts and practices (*i.e.*, UDAP) statutes are also

frequently applied to consumer warranty issues.  These statutes also require a

liberal construction.

11.    Ambiguities in these statutes should be construed in favor of those who the

legislation is intended to benefit, which is consumers.  Restrictions and

exceptions should not be read into these statutes.

12.    The UCC carries a statutory mandate of liberal construction to promote its

underlying purposes and policies.

13.    This mandate means the Code's general requirements of reasonableness and

good faith can be more influential in deciding a case than the Code's strict, literal

language.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

14. This liberal construction principle is most important in consumer transactions. Although the Code's primary focus is on commercial transactions between merchants, in consumer transactions, many courts rely on UCC § 2 – 316's policy of protecting the buyer from the "surprise" of "unbargained" disclaimers to invalidate disclaimers not negotiated with, or pointed out to, the consumer.

15. In fact, several comments to UCC sections add to the seller's obligations to non – merchant buyers or give courts the leeway to find for a consumer buyer.

16. Accordingly, the Ketchums bring claims against Camping World, Freightliner, Good Sam, and Thor for breaching express and implied warranties, violating the Magnuson – Moss Warranty Act, and violating the Indiana Deceptive Consumer Sales Act, IC §§ 24 – 5 *et seq.*, or the New York Deceptive Acts and Practices Statute, General Business Law § 349.

## JURISDICTION AND VENUE

17. This Court has jurisdiction because a federal claim exists in which there is more than $50,000.00 in controversy under 15 U.S.C. § 2301 *et seq.*, invoking 28 U.S.C. § 1331, the amount in controversy is more than $75,000.00 and is between citizens of different states, invoking 28 U.S.C. § 1332, or the "first – to – file" rule, which says that if virtually identical parties and issues could be pending in separate courts, the entire action should be decided in the court in which the action was

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

first filed.  (*Great N. Ry. Co. v. National Rd. Adjust. Bd.*, 422 F.2d 1187, 1193 [7th

Cir. 1970]; *see*, *Harkrader v. Wadley*, 172 U.S. 148, 164, 19 S. Ct. 119, 43 L. Ed. 399

[1898]).

18.    This Court is the proper venue because the Defendant Thor resides within the

judicial district of the Northern District of Indiana, invoking 28 U.S.C. § 1391,

and because the Defendant's contractual obligations with the Plaintiffs designate

the Northern District of Indiana as the sole venue where claims against the

Defendant may be brought.

## PARTIES

19.    Ricky Lee Ketchum and Debra A. Ketchum are natural persons residing in the

County of Oswego, State of New York, and are consumers and buyers within the

meaning of all applicable laws.

20.    Thor Motor Coach, Inc. ("Thor") is an Indiana foreign for – profit corporation

authorized to do business, and is doing business, in the State of Indiana, and is a

subsidiary of Thor Industries, Inc., a Delaware for – profit corporation, and is a

warrantor of a motor vehicle the Ketchums purchased in New York State and is a

seller and merchant at all relevant times in this case.

21.    Camping World Leasing Company, LLC, doing business as Camping World RV

Sales and a subsidiary of Camping World Holdings, Inc. ("Camping World"), a

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

Delaware for – profit corporation, and was a merchant (through Camping World Syracuse and Camping World Toledo, *infra*), a supplier, and a Thor – authorized representative at all relevant times in this case.

22.   Freightliner Custom Chassis Corporation ("Freightliner"), a subsidiary of Daimler Trucks North America, is a Delaware domestic corporation, an Indiana Foreign For – Profit Corporation, a New York State Foreign Business Corporation, a South Carolina foreign corporation, authorized to do business, and is doing business, in the States of Indiana, New York and South Carolina, and is a supplier and merchant at all relevant times in this case.

23.   Good Sam Enterprises, LLC ("Good Sam"), also a subsidiary of Camping World Holdings, Inc. is a foreign for – profit corporation authorized to do business, and is doing business, in the State of Illinois, is a warrantor of a motor vehicle the Ketchums purchased in New York State and is a seller and merchant at all relevant times in this case.

## STATEMENT OF FACTS

24.   The subject vehicle is a 2019 Venetian J40 motor coach (VIN: 4UZACHFE9JCKK0424) ("Venetian").  A copy of the Camping World Bill of Sale and the New York State Certificate of Title describing the Venetian are annexed

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

to this pleading as Exhibit "**1**," and incorporated by reference, as if set forth fully

herein.

25.    The Ketchums purchased the subject vehicle in reliance to their detriment on the

existence of Thor's written warranty and on advertising representations of Thor.

A copy of Thor's written warranty is annexed to this pleading as Exhibit "**2**," and

incorporated by reference, as if set forth fully herein.

26.    The Ketchums also purchased the subject vehicle in reliance to their detriment on

the Camping World's advertising and other representations, including those

made about Good Sam.

27.    On January 6, 2020, Daniel Murray, a Camping World employee and

salesperson, sent an e – mail to the Ketchums.

28.    In that e – mail, Mr. Murray admitted he knew the Ketchums had never

purchased a recreational vehicle before and that the Ketchums were purchasing

the recreational vehicle so they would have someplace to stay that they could call

their own while the Ketchums were traveling after their retirement.

29.    In this same e – mail, Mr. Murray promised the Ketchums would have "the

entire Syracuse CW team in [the Ketchums] life from now on," and, as an

additional inducement to purchase a recreational vehicle from Camping World

Syracuse, the following enticements:

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

a.    a three (3) year free Good Sam Camping Club membership;

b.    $1400 in Coupons (which Mr. Murray said offered) huge savings at all

Camping World (*i.e.*, CW) Super Centers;

c.    a free annual twenty – two (22) Point RV Inspection;

d.    one (1) year free Roadside Assistance (which Mr. Murray said would offer

"Peace of Mind");

e.    1 – year free Traveled Assist (which Mr. Murray said included Emergency

Medical Benefits);

f.    Full Liquid Propane (*i.e.*, LP) tanks upon (the Ketchums) taking delivery

of a Camping World Syracuse – sold recreational vehicle;

g.    a new deep cycle battery;

h.    full clean and detail (of the recreational vehicle);

i.    full set up, walkthrough, and demonstration of (the Ketchums') new

recreational vehicle; and

j.    twenty – one (21) nights of free camping.

30.    These promises and inducements, among others, convinced the Ketchums to

purchase a recreational vehicle from Camping World Syracuse.

31.    However, despite the Ketchums' firm belief in Camping World Syracuse and

Thor employees' promises, inducements, and oral and written representations,

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

these have been nothing but broken promises and misrepresentations, as set

forth throughout this pleading.

32.    For example, despite Mr. Murray's written promises and inducements in his

January 6, 2020 e – mail, Camping World Syracuse never provided the Ketchums

with:

    a.    full LP tanks when the Ketchums took delivery of the Venetian; although

        those tanks had been full until Camping World Syracuse used their

        contents to attempt to repair the Aqua – Hot heating system without

        refilling the tanks;

    b.    the new Deep Cycle battery;

    c.    a full cleaning and detail of the Venetian;

    d.    a full set up and walkthrough and demonstration of the Venetian; and

    e.    the 21 nights of free camping.

33.    Regarding the 21 nights of free camping, Mr. Murray never told the Ketchums in

his January 6, 2020 e – mail that to receive the 21 nights of free camping, the

Ketchums would first have to sit through a sales pitch and then the true benefit

was merely coupons for separate stays.

34.    Throughout the sales process, the Camping World Syracuse staff told the

Ketchums multiple times if the Ketchums needed or had questions about

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

anything, then Camping World anywhere in the United States would help, which the Ketchums believed.

35.   On January 11, 2020, while attending Camping World's RV show, the Ketchums offered to purchase from Camping World Syracuse a 2017 Thor Four Winds ("Four Winds") recreational vehicle.  Camping World Syracuse accepted the Ketchums' purchase offer.

36.   On January 13, 2020, the Ketchums canceled their agreement to purchase the Four Winds.

37.   On January 16, 2020, Mr. Murray placed an unsolicited telephone call to the Ketchums.

38.   During that telephone call, Mr. Murray apologized to the Ketchums on Camping World's behalf for the problems they had trying to purchase the Four Winds.

39.   Mr. Murray told the Ketchums that Camping World wanted to make up for the bad experience the Ketchums had and promised the Ketchums that Camping World would make things right if they would give Camping World a second chance.

40.   The Ketchums, in reliance to their detriment on Mr. Murray's representations, agreed to return to Camping World and give it a second chance.

DOMBROW LAW FIRM
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

41.   Also on January 16, 2020, the Ketchums went to Camping World's location in Syracuse, New York ("Camping World Syracuse").

42.   During that visit, the Ketchums looked at a 2019 Thor Venetian J 40 ("Venetian"), which they had looked at before offering to purchase the Four Winds.

43.   However, between the time the Ketchums looked at the Venetian back when he was looking at the Four Winds and January 16, 2020, Camping World put the Venetian under repair and had not disclosed this fact to the Ketchums until they arrived at Camping World Syracuse.

44.   The Ketchums discovered upon their arrival at Camping World Syracuse the Venetian was in Camping World Syracuse's repair facility because, among other things, Camping World had not correctly winterized the Venetian and was trying to repair the Aqua – Hot Heating System.

45.   Regardless, Mr. Murray showed the Venetian to the Ketchums and pointed a few things wrong; for example, Mr. Murray pointed out that the:

a.   passenger side slide out seal was rolled up and laying on top of the slide out;

b.   rear toilet had **dried urine** in it;

c.   slide buttons that operate the slides were performing opposite of their intended functions in that the passenger side operated the driver's side;

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

d.      left side slide seal was torn;

e.      high beam lights and fog lamps were both **inoperable**;

f.      window valance by the fireplace was loose;

g.      grab handle at the entry door was loose;

h.      washing machine door hit a cabinet when the door was opened;

i.      pantry slide rubbed when opened;

j.      corner trim on the ceiling above the microwave was loose;

k.      Light Emitting Diode (*i.e.*, LED) lights on the Venetian's awning were out;

l.      soundbar above the television was loose;

m.      outside door covering the television would not open;

n.      generator exhaust pipe and chrome heat shield were dented;

o.      drawer under the sink would not slide out;

p.      the bedroom was missing a splitter box and coaxial cable from the

        television;

q.      toilet paper holder in the bathroom was missing;

r.      barrel fuse and cap were missing from the kitchen vent;

s.      owners' manuals and a Thor bag were missing;

t.      central vacuum was missing parts required to operate it;

u.      drawer latches needed to be replaced; and

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

v.      2 chairs were missing.

46.    Mr. Murray and Mr. Gary Marsh, Camping World Syracuse's Finance and

Insurance (*i.e.*, F&I) Manager, both told the Ketchums that not only would

Camping World repair everything that was wrong with, and replace all the

missing items in the Venetian, but also (Mr. Murray promised the Ketchums)

that Camping World would install one hundred sixty – five (165) watt solar

panels, even though the Ketchums would have purchased the Venetian without

the solar panels.

47.    On January 24, 2020, the Ketchums, relying to their detriment on Mr. Murray's

representations, signed an agreement to purchase the Venetian, which was to be

their first recreational vehicle.

48.    Upon information and belief, after signing the purchase agreement, the

Ketchums asked Mr. Murray for a copy of the purchase agreement because the

Ketchums told Camping World they already had financing available to purchase

the Venetian; they needed the purchase agreement copy to obtain the financing.

49.    Camping World Syracuse, instead of giving the Ketchums a copy of the purchase

order to obtain financing on their own, **guaranteed** the Ketchums that Camping

World would meet or beat the interest rate the Ketchum's financing source

quoted to them.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

50.  Camping World Syracuse also told the Ketchums if the Ketchums financed the Venetian purchase through Camping World Syracuse, then the Ketchums could take delivery of the Venetian faster than if the Ketchums arranged the financing themselves because Camping World Syracuse would not have to wait either for the paperwork or the money from the Ketchums' financing source.

51.  The Ketchums, again in reliance to their detriment on Camping World Syracuse's representations, changed their minds and agreed to finance the Venetian's purchase through Bank of America, which was the lender Camping World Syracuse arranged.

52.  On January 25, 2020, Camping World Syracuse told the Ketchums they had been approved for financing and they agreed on January 31, 2020 at 11:00 a.m. to sign the loan papers and take delivery of the Venetian.

53.  Camping World told the Ketchums they would receive a two (2) hour "walk through" of the Venetian so the Ketchums understood how the Venetian operated and how all the features functioned, and finally get to test drive the Venetian before taking delivery.

54.  On January 27, 2020, Mr. Ketchum texted Mr. Murray to obtain the lien holder's name so Mr. Ketchum could give that name to his insurance company.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

55.   Mr. Murray, responding to Mr. Ketchum's request, initially told Mr. Ketchum that Bank of the West will be the lien holder.

56.   However, on that same date, Mr. Murray texted Mr. Ketchum back later that Mr. Murray had given Mr. Ketchum the wrong lienholder information; Mr. Murray then told Mr. Ketchum that Bank of America would be the correct lien holder.

57.   Mr. Ketchum, in reliance to his detriment on Mr. Murray's corrected representation, provided his insurance company with Bank of America as the only lien holder.

58.   On January 30, 2020, Mr. Ketchum texted Mr. Murray to verify Camping World Syracuse made all the repairs to the Venetian; Mr. Ketchum also confirmed with Mr. Murray he and his wife were ready to sign the paperwork and take delivery of the Venetian from Camping World Syracuse as scheduled.

59.   However, Mr. Murray disclosed to Mr. Ketchum for the first time during this conversation that although the Venetian had been in Camping World Syracuse's possession since Camping World Syracuse first received the Venetian to sell, the Venetian was undergoing repairs in Camping World Syracuse's repair facility, that the Venetian had an open recall on it, and that Camping World Syracuse could not deliver the Venetian to the Ketchums until this open recall had been

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

addressed.  Upon information and belief, Camping World Syracuse never provided the Ketchums with a copy of this recall notice.

60.     Despite Camping World's refusal to deliver the Venetian to the Ketchums as promised, Camping World still asked the Ketchums to go to Camping World Syracuse to sign paperwork obligating the Ketchums to the transaction.  The Ketchums refused and said they would only go to Camping World Syracuse to sign transaction paperwork when the Venetian was repaired and ready for the Ketchums to drive off the lot.

61.     On February 2, 2020, Mr. Ketchum texted Mr. Murray.

62.     During this conversation, Mr. Ketchum reminded Mr. Murray that **someone (presumably a Camping World Syracuse employee) had urinated in the Venetian's rear toilet** and that he wanted Camping World to address that issue before the Ketchums took delivery of the Venetian.  Mr. Ketchum also asked Mr. Murray when he and Mrs. Ketchum should expect to take delivery of the Venetian.

63.     Mr. Murray's response to these inquiries was that Tracey Road Equipment, the Syracuse area Freightliner franchisee, scheduled an appointment for February 7, 2020 to replace or repair the FLT788A-O rear power distribution modules and the #18V-582 and FL794-V brake caliper mounting bolts #18V-703, and he would

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

check with TRE on February 8, 2020 to confirm whether TRE completed the work.

64. On February 6, 2020, Mr. Ketchum texted Mr. Murray to ask about the status of the other repairs Camping World Syracuse was making to the Venetian.

65. Mr. Murray's response to Mr. Ketchum's February 6, 2020 text was to tell Mr. Ketchum that all the repairs had been completed.

66. However, that statement was not true because Mr. Murray then qualified the statement by saying Camping World Syracuse was still waiting on parts to install on the Venetian. For example, these parts included several missing items such as latches, chairs, water heater parts, the vacuum tool kit, the LED lights, seals, a shower door lock, and the solar panels Camping World Syracuse promised to install on the Venetian.

67. Mr. Ketchum responded to Mr. Murray's text by asking whether Mr. Murray thought it would be another four (4) weeks before Camping World would deliver the Venetian to the Ketchums; Mr. Murray replied that he did not think so.

68. On February 7, 2020, Mr. Ketchum texted Mr. Murray to ask whether Camping World would be taking the Venetian to TRE to undergo repair for the recall.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

69.     Mr. Murray's text response to Mr. Ketchum was that the Venetian had been at

        TRE since February 2, 2020.

70.     On February 10, 2020, Mr. Ketchum texted Mr. Murray to remind him a

        Camping World Syracuse employee had caused damage to the Venetian's

        generator exhaust pipe (*i.e.,* replacing a chrome heat shield and straighten or

        replace a bent pipe), and that Camping World Syracuse must address that

        damage before delivering the Venetian to the Ketchums.

71.     The Ketchums knew a Camping World Syracuse employee caused the damage to

        the generator exhaust pipe because Camping World Syracuse represented to the

        Ketchums the Venetian was new (*i.e.,* had never been titled to a previous owner),

        only Camping World Syracuse employees had driven the Venetian back and

        forth to different recreational vehicle shows, no one else except Camping World

        Syracuse employees had driven the Venetian anywhere, and the Ketchums had

        never driven the Venetian when they learned of the damage.

72.     Mr. Murray responded that Ms. Melissa Randall was the Camping World Service

        Writer on the Venetian's work order and he also asked Mr. Ketchum whether she

        had contacted Mr. Ketchum yet.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

73.   Mr. Ketchum responded to Mr. Murray that Ms. Randall had not contacted him yet about this repair; Mr. Murray provided Ms. Randall's telephone number so Mr. Ketchum could call her.

74.   On February 18, 2020, Ms. Erin McClure – Rivera, Camping World Syracuse's Parts and Service Director and a Camping World employee, e – mailed and spoke with Mr. Ketchum.

75.   In these communications, Mr. Ketchum reminded Ms. McClure – Rivera that almost thirty (30) days had passed since the Ketchums' financing had been approved, the Ketchums still hadn't signed the loan paperwork because of the ongoing repairs, and that the loan approval would expire after 30 days, which would cause the Ketchums to have to repeat the financing process.

76.   The Ketchums scheduled an appointment with Mr. Murray, Ms. McClure – Rivera, and Ms. Jamie Hall, another Camping World Syracuse employee, on February 20, 2020 at 2:30 p.m. to sign the paperwork for the Venetian and to test drive the Venetian for the first time.

77.   On February 20, 2020, the Ketchums went to Camping World Syracuse to sign the financial paperwork and to test drive the Venetian for the first time, although Camping World had not finished the promised repairs nor installed the missing

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

parts, including the solar panels, which Camping World Syracuse offered to include as part of the vehicle purchase.

78.   The Ketchums objected to signing some of the paperwork (*i.e.*, the Thor registration and acknowledgement of receipt of warranty and product information and the acceptance of retail delivery) because Camping World had not given the Ketchums the promised two (2) hour tour and a demonstration of the Venetian's features and functions.

79.   On February 21, 2020, Mr. Murray texted Mr. Ketchum to tell Mr. Ketchum he should be receiving a telephone call from Ms. Randall on February 22, 2020.

80.   On February 22, 2020, Ms. McClure – Rivera e – mailed Mr. Ketchum.  She promised Mr. Ketchum she would track the missing parts for Mr. Ketchum on Monday, February 24, 2020, then tell Mr. Ketchum the repairs to the Venetian have been completed and schedule a pickup time.

81.   On that same date, Mr. Murray told Mr. Ketchum he would be speaking with Mr. Kurt Schroeder, the Camping World Syracuse General Manager, on Monday, February 22, 2020 about the repairs, the amount of time the Ketchums had been waiting for Camping World Syracuse to complete the promised repairs, and to arrange delivery of the Venetian to the Ketchums.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

82. On February 27, 2020, Mr. Ketchum learned Camping World would be participating in a recreational vehicle show at the New York State Fairgrounds in Geddes, New York (*i.e.*, Syracuse).

83. Mr. Ketchum's understanding was that a Thor representative would be present at this show because Mr. Ketchum e – mailed Ms. Sheila Kujawski, a Thor employee to ask her whether Thor would have a representative at the recreational vehicle show, to which Ms. Kujawski affirmatively responded.

84. Mr. Ketchum contacted Thor in anticipation of a Thor representative's attendance at this show to ask who that representative would be and when they would be at the show because the Ketchums wanted someone to show the Ketchums how the $229,000.00 recreational vehicle they purchased, but still was not in the condition Camping World promised the Ketchums it would be in, functioned because Camping World had not fulfilled its promise to the Ketchums to provide this demonstration.

85. Mr. Chris D. Phifer, a Thor dealer technical support/warranty/paint support employee, responded to Mr. Ketchum that Thor could not go to the Ketchums' home to provide a tour of the Venetian, even though Mr. Ketchum did not ask for anyone to provide the tour at his home.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

86. On February 28, 2020, the Ketchums finally took delivery of the unrepaired Venetian, after forty – four (44) days of being out of service ostensibly to be repaired, but only because Camping World Syracuse represented to the Ketchums it had done all it could do until the missing parts arrived at Camping World Syracuse.

87. On that same date, however, Mr. Ketchum sent Mr. Murray a photograph of all the kitchen area doors in the Venetian that would not stay closed, but instead continued to slide open while driving, although Camping World Syracuse represented to the Ketchums this issue had been repaired.

88. Also on this same date, the Ketchums asked about the satellite television hookup. A Camping World Syracuse employee told the Ketchums to call the satellite television provider to subscribe to the provider's service, and the provider would then connect the satellite television for the Ketchums to use.

89. Mr. Murray responded to Mr. Ketchum that he will contact Ms. Randall about this issue with the sliding doors.

90. On February 29, 2020, Mr. Ketchum texted Mr. Murray to tell Mr. Murray, and to provide him with a photograph, that shows the Aqua – Hot heating system that Camping World had represented to the Ketchums was repaired was in fact not heating any water.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

91.     Mr. Murray represented to Mr. Ketchum on that same date that Mr. Murray

        spoke with Ms. Randall and that Ms. Randall would be having a Camping World

        Syracuse service technician telephone Mr. Ketchum.

92.     However, when the Camping World Syracuse service technician called, he told

        Mr. Ketchum that recreational vehicles such as the Venetian are not designed to

        be (used) in colder climates (like upstate New York) and that the Ketchums

        would be lucky if the Venetian warmed (water) to fifty (50) or sixty (60) degrees

        (Fahrenheit).  Upon information and belief, Mr. Ketchum learned about this issue

        during this telephone call.

93.     The Camping World Syracuse service technician also told Mr. Ketchum during

        this telephone conversation that the heater that provided heat on the driver's feet

        was nothing more than a hose, with no vent to guide air flow, thrown under the

        Venetian's dashboard and did not really work (as intended).

94.     Mr. Ketchum told the Camping World Syracuse service technician there was no

        heat in either the sink area of the kitchen or coming from under the Venetian's

        fireplace.  The Camping World Syracuse service technician then asked whether

        (either of) these two (2) locations were on a "slide out."  Mr. Ketchum responded

        both locations were on a "slide out."  The Camping World Syracuse service

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

technician then told Mr. Ketchum the heating lines to these locations were "kinked" and not allowing the heat to circulate (properly).

95.     After Mr. Ketchum and the Camping World Syracuse service technician ended their telephone conversation, Mr. Ketchum took apart the sink area heater and the fireplace heater after the service technician told Mr. Ketchum the slide out would have to be torn apart to get to the kinked hoses.

96.     However, only because Mr. Ketchum believed he was acting on a Camping World Service Technician's advice and instructions and because he had experience as a certified heavy wheel equipment technician going back to when he served in the United States Army, did Mr. Ketchum feel confident in verifying the Camping World Service Technician's representations himself.

97.     Mr. Ketchum then discovered the problem with the sink heater was that it had been wired "backwards" and not functioning at all.

98.     Then, Mr. Ketchum discovered the fireplace heater was just lying in the wall, not warming the Venetian generally, but only the area between the back of the fireplace and the exterior of the mid bathroom walls.  He photographed these areas in their pre – repair state.

99.     Mr. Ketchum repaired the sink area and fireplace heaters himself.  Then, he photographed his work and sent those photographs to Mr. Murray to show him

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

the lines were not kinked as the Camping World Syracuse service technician represented to Mr. Ketchum.

100.    On March 2, 2020, Mr. Chris Phifer, a Thor employee who handled dealer technical support, warranty, and paint issues, e – mailed Mr. Ketchum.

101.    In this e – mail, Mr. Phifer represented to Mr. Ketchum that Thor would have a representative at the recreational vehicle show in Syracuse.  Mr. Phifer also asked Mr. Ketchum for a list of issues the Ketchums were having with the Venetian so Mr. Phifer (and Thor) could work with the Ketchums to address these issues.

102.    On this same date, Mr. Ketchum responded to Mr. Phifer's e – mail providing a list of repairs still outstanding and telling Mr. Phifer about the delay in the Ketchums taking delivery of the Venetian.

103.    Mr. Ketchum also informed Mr. Phifer the Ketchums had already canceled a planned trip because of the still outstanding repairs, and that the Ketchums had another trip planned for on or about April 10, 2020.

104.    On March 9, 2020, Ms. Randall e – mailed Mr. Ketchum.  She told Mr. Ketchum in this e – mail that all the parts Camping World Syracuse had been waiting on had arrived, and that Camping World Syracuse would pick up the Venetian from the Ketchums (at their Oswego home) on March 11, 2020.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

105. On March 11, 2020, Camping World Syracuse indeed picked up the Venetian from the Ketchums' home to take back to Camping World Syracuse for repairs.

106. On March 12, 2020, Mr. Phifer e – mailed Mr. Ketchum to tell Mr. Ketchum that Thor is doing what they can to help the Ketchums, which to the Ketchums meant Mr. Phifer would be expediting part orders and providing Camping World Syracuse with assistance to repair the Venetian.

107. On March 20, 2020, after an additional nine (9) days out of service at Camping World Syracuse, and despite Ms. Randall's March 9, 2020 representations to Mr. Ketchum, Camping World Syracuse informed the Ketchums it could not complete the repairs because Camping World Syracuse is waiting on parts again. The Ketchums then went to Camping World Syracuse and pick up the Venetian from that location.

108. On April 10, 2020, the Ketchums canceled their planned trip only because the Venetian had not been repaired as promised and was not ready for travel.

109. On April 20, 2020, Mr. Ketchum contacted Heather Roeder at Thor customer service because Mr. Ketchum had been unable to receive any response from either Mr. Phifer at Thor or anyone at Camping World Syracuse to Mr. Ketchum's communications.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

110.   On April 21, 2020, Ms. Casey Beck, a Camping World Syracuse employee, telephoned Mr. Ketchum.

111.   During this telephone call, she told Mr. Ketchum that Camping World Syracuse "messed up" the financing and the financing paperwork had to be completely redone.

112.   Specifically, Ms. Beck told Mr. Ketchum that Camping World Syracuse wrote a higher dollar amount in the financing paperwork than what Bank of America had approved in its review of the Ketchums' credit application.

113.   Ms. Beck further stated Bank of America notified Camping World Syracuse about the problem, but neither Camping World Syracuse nor Bank of America resolved the issue, so approximately thirty (30) days later, Bank of America denied assignment of the loan from Camping World Syracuse, leaving Camping World Syracuse as the original creditor for the Venetian purchase.

114.   On this same telephone call, Mr. Ketchum revoked acceptance of the Venetian by telling Ms. Beck that he and his wife are tired of dealing with Camping World Syracuse on the repairs.

115.   During this same telephone call, not only did Ms. Beck reject Mr. Ketchum's revocation of acceptance of the Venetian, but also she escalated the matter by threatening the Ketchums.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

116.   Specifically, Ms. Beck, acting on Camping World Syracuse's behalf, threatened the Ketchums with a lawsuit and that Camping World Syracuse would make the Ketchums pay Camping World Syracuse's court costs and attorney's fees.  Ms. Beck went on further to tell Mr. Ketchum that the Ketchums signed a contract and the Ketchums were therefore obligated to resign the paperwork.

117.   During this same telephone call, Ms. Beck represented to Mr. Ketchum that she confirmed with the CWS GM & SVP that CW would address and take care of all the Ketchums' concerns, regardless whether Thor approved the repairs.  Ms. Beck also offered the Ketchums a full tank of fuel and a $1,000.00 gift card.

118.   The Ketchums agreed to accept Ms. Beck's offer, but only in the face of her threats on Camping World's behalf of taking legal action against the Ketchums if the Ketchums did not sign new paperwork.

119.   However, upon information and belief, and without the Ketchums' prior knowledge or consent, Camping World Syracuse shortly after Mr. Ketchum's telephone conversation with Ms. Beck, began making hard inquiries on the Ketchums' credit with at least five (5) different financial institutions.

120.   Upon information and belief, the Ketchums never gave Camping World Syracuse verbal or written authorization to make these hard inquiries on the Ketchums'

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

credit, especially more than ninety (90) days after the Ketchums applied for credit through Camping World Syracuse.

121. On April 21, 2020, Ms. Roeder e – mailed Mr. Ketchum to tell him she referred Mr. Ketchum to Mr. Steve Tobias from Thor customer service.

122. Mr. Tobias e – mailed Mr. Ketchum on this same date to tell Mr. Ketchum that Thor was doing everything it could do to assist Mr. Ketchum with the repairs. Mr. Tobias also told Mr. Ketchum that Thor's regional service manager would like to meet with the Ketchums to review the Ketchums' concerns.

123. On April 26, 2020, the Ketchums were simulating camping in the Venetian at their home (because the Venetian had not been repaired to take out, the Ketchums were familiarizing themselves with the Venetian's features and functions since neither Camping World Syracuse nor Thor had provided the promised demonstration and walkthrough).

124. On this date, Mr. Ketchum woke up to water coming into the Venetian; the Venetian's whole passenger side had water leaking all over the counter, the seats, the stove, the microwave oven, the stove, and the refrigerator.

125. The leaking water ruined a tablet, a cell phone, the microwave oven, and the stove. On this same date, Mr. Ketchum e – mailed Ms. Roeder a video of the mess.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

126.   On April 26, 2020, the Ketchums drove the Venetian to Camping World Syracuse and left it there for repairs to the water leaks after Mr. Ketchum e – mailed Camping World Syracuse about the water leaks because Camping World Syracuse never responded to his e – mail.

127.   During this visit, Mr. Ketchum met with Mr. Steven Fassinger, a Camping World Syracuse Service Advisor to show him the video of the leak.  Mr. Fassinger responded that he needed Thor to come to Camping World Syracuse to help Camping World Syracuse make the repairs.

128.   On April 27, 2020, Mr. Tobias e – mailed Mr. Ketchum about the Venetian's water leak.  Mr. Ketchum explained to Mr. Tobias the April 26, 2020 water leak is the same water leak the Ketchums had been complaining about to Camping World Syracuse since the Ketchums purchased the Venetian, and that there were two (2) leaks at this point:  one (1) all along the passenger side and 1 in the bathroom in the middle of the Venetian.

129.   On April 30, 2020, Mr. Ketchum e – mailed Mr. Tobias to express his concerns about the water leak.

130.   On May 5, 2020, Mr. Tobias e – mailed Mr. Ketchum.

131.   In that e – mail, Mr. Tobias represented to Mr. Ketchum that Mr. Tobias and Mr. Dean Albanese, another Thor customer service employee, had been in contact

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

with Camping World Syracuse and that Mr. Albanese would travel to Syracuse within the next two (2) weeks to address the Ketchums' issues with the Venetian.

132.    On May 20, 2020, Mr. Ketchum sent an e – mail to Ms. McClure – Rivera to request a status update on the Venetian repairs.

133.    On that same date, Ms. McClure – Rivera responded to Mr. Ketchum's e – mail, representing to Mr. Ketchum in that e – mail that Mr. Albanese from Thor was scheduled to be at Camping World Syracuse on May 21, 2020.

134.    On May 21, 2020, Ms. McClure – Rivera e – mailed Mr. Ketchum to tell Mr. Ketchum that Mr. Albanese was at Camping World Syracuse.

135.    On that same date, Mr. Ketchum traveled from Red Creek, New York, where he worked, to Camping World Syracuse.

136.    Upon his arrival, Mr. Ketchum met with Mr. Albanese, Ms. McClure – Rivera, Mr. Steven Fassinger, a Camping World Syracuse Service Advisor, and Mr. John Harmath, a Camping World Syracuse Service Technician, to discuss Mr. Ketchum's issues with the Venetian.

137.    On this same date, after the Venetian had already been out of service at Camping World Syracuse for twenty – six (26) days, Mr. Ketchum discovered that Camping World Syracuse had made no repairs whatsoever to the Venetian, and

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

that the Venetian had been sitting on Camping World Syracuse's property apparently untouched since the Ketchums dropped it off there on April 26, 2020.

138.   During the May 21, 2020 meeting, over four (4) months after Mr. Murray pointed out problems with the Venetian and promised those problems would be repaired before the Ketchums took delivery of the Venetian, while the group (*i.e.*, Ms. McClure – Rivera, Mr. Fassinger, Mr. Harmath, and Mr. Albanese) was reviewing the Ketchum's problems with the Venetian, they noticed other things that were not correct and added those problems to the list of repairs to be made.

139.   During this same meeting, Mr. Albanese, Mr. Fassinger, and Mr. Harmath told Mr. Ketchum for the first time the Venetian's washer was not designed to have hot water hooked up to it, which was why no hot water is hooked up to the washer.  Specifically, they told Mr. Ketchum the washer is built to heat water rather than having a hot water hookup.

140.   Upon information and belief, this is the first time anyone from Camping World or Thor disclosed to Mr. Ketchum the Venetian's washer was not designed to have hot water hooked up to it.

141.   The May 21, 2020 meeting concluded with Mr. Albanese promising to Mr. Ketchum that "we are now on the fast track" and "everything should be moving

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

right along," which Mr. Ketchum understood to mean the repairs would be expeditiously and correctly completed.

142.    On May 28, 2020, Mr. Ketchum e – mailed Mr. Tobias, Ms. McClure – Rivera, Mr. Fassinger, and Ms. Beck to obtain a status update on the Venetian repairs.  He also reminded them Mr. Ketchum and his wife would be picking up the Venetian on June 5, 2020 for a trip the Ketchums had scheduled beginning on June 6, 2020.

143.    Mr. Ketchum also explained to Ms. McClure – Rivera, Mr. Fassinger, and Mr. Harmath this trip would be the "maiden voyage" for the Ketchums with the Venetian; they had planned a three (3) – week, three thousand six hundred fifty (3,650) mile trip to Mississippi, Missouri, and Iowa, then return home to New York State, and they hoped the Venetian would be ready (*i.e.*, all repairs would be completed and the Venetian would be ready to be used as it had been designed to be used) for such a trip.

144.    On May 29, 2020, Ms. McClure – Rivera contacted Mr. Ketchum to tell him she would be speaking with Mr. Harmath to obtain a status update on the repairs.

145.    On June 1, 2020, Mr. Ketchum e – mailed Ms. McClure – Rivera at Camping World Syracuse because no one from Camping World Syracuse provided Mr. Ketchum the promised status update.  Mr. Ketchum reminded Ms. McClure –

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

Rivera he would be at Camping World Syracuse on June 5, 2020 to pick up the Venetian for the Ketchums' trip.

146. On that same date, Ms. McClure – Rivera responded to Mr. Ketchum's e – mail. She told Mr. Ketchum she spoke with Mr. Harmath, who told Ms. McClure – Rivera he had been working on the Venetian, he was aware of the deadline, and hoped to have the repairs completed in time.

147. On June 4, 2020, the Ketchums arrived at Camping World Syracuse to pick up the Venetian for their trip.

148. However, despite being out of service for repairs at Camping World Syracuse for forty (40) days, those repairs were still not complete because according to Camping World Syracuse, the parts necessary to complete the repairs had still not arrived from wherever Camping World Syracuse had ordered the parts.

149. Regardless, Ms. McClure – Rivera and Mr. Harmath from Camping World Syracuse told the Ketchums the Venetian was roadworthy and should be okay for the Ketchums' trip.

150. Camping World Syracuse made this representation about the Venetian's roadworthiness even though Camping World Syracuse and its staff knew or should have known the Venetian had multiple leaks at the passenger slide out, the mid – bathroom window, and the under-storage area.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

151.   On June 5, 2020, Mr. Ketchum telephoned Ms. McClure – Rivera.  He expressed his concerns to her about the solar panels' electrical control panel.  Ms. McClure – Rivera connected Mr. Ketchum with Mr. Harmath, who told Mr. Ketchum the electrical control panel should be okay until the Ketchums return in three (3) weeks, after which Camping World Syracuse could look again at the electrical control panel.

152.   Upon information and belief, Mr. Ketchum accepted Mr. Harmath's representation as true; Mr. Ketchum and his wife went on their trip.

153.   On June 27, 2020, while the Ketchums were driving the Venetian through Ohio, Mr. Ketchum noticed the Venetian had what would be described as a "wobble." After noticing this "wobble," Mr. Ketchum discovered the tire monitoring system Camping World Syracuse installed was not working.

154.   Mr. Ketchum checked all the Venetian's tires when he and Mrs. Ketchum stopped for fuel.  Mr. Ketchum discovered during this inspection both rear inner dual tires were flat.

155.   Upon discovering both the rear inner dual tires were flat, Mr. Ketchum drove the Venetian directly to the closest Camping World location in Rossford, Wood County, Ohio ("Camping World Toledo").

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

156.   Mr. Ketchum stopped at this Camping World because Mr. Murray at Camping World Syracuse told the Ketchums during the sales and delivery processes if the Ketchums ever had **any** problems with the Venetian, then the Ketchums could stop at **any** Camping World location for assistance.  (*emphasis added*)

157.   However, when Mr. Ketchum went into the service area at Camping World Toledo to explain both rear inner dual tires were flat and he needed assistance, the Camping World Toledo Service Manager told Mr. Ketchum that location "didn't do tires" and that Camping World Toledo could not help him.

158.   Mr. Ketchum explained to the Camping World Toledo Service Manager the Ketchums purchased the Venetian new from Camping World Syracuse and the Venetian should be covered under warranty.

159.   Camping World Toledo stood by its position it could not help Mr. Ketchum and suggested he telephone roadside assistance, if he had it, for help.  The Camping World Toledo Service Manager told Mr. Ketchum if he pulled the Venetian around the side of the building, then they would put air in the flat tires.  Mr. Ketchum tried this, but the tires would not hold air.

160.   On that same date, Mr. Ketchum then telephoned Camping World Syracuse and asked to speak with Ms. McClure – Rivera; the Camping World Syracuse

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

employee who answered the telephone told Mr. Ketchum that Ms. McClure –

Rivera was in and placed Mr. Ketchum on hold.

161.    After waiting on hold for thirty (30) minutes, Mr. Ketchum disconnected the call

and called back.  However, when Mr. Ketchum called back, there was no answer

because Camping World Syracuse was closed at that point.

162.    On that same date, Mr. Ketchum telephoned Good Sam Roadside Assistance

("Good Sam") for roadside assistance.  Good Sam told Mr. Ketchum it would

find someone to help him.  The Good Sam employee verified the tire brand and

size with Mr. Ketchum and told Mr. Ketchum he would call him back.

163.    The same Good Sam employee called Mr. Ketchum back several minutes later to

reverify the tire brand and size and then ended the call.

164.    The same Good Sam employee called Mr. Ketchum a third time.  He told Mr.

Ketchum he had found someone to help the Ketchums and that person was on

the way.

165.    However, even though the Venetian had Michelin X 275/80 R22.5 tires, Tire

Rescue, the company Good Sam found to help the Ketchums, was sending out

Good Year Marathon LHS 295/75 22.5 tires to replace the flat tires.  That was not

the worst part, though.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

166.   The worst part (for the Ketchums) was Good Sam demanded the Ketchums pay $1,551.52 for the repairs **before** Tire Rescue would send anyone to help the Ketchums.  The Ketchums paid this expense, seeing no other alternative than being stranded in Northwestern Ohio in their vehicle.

167.   Upon arrival, the Tire Rescue employee replacing the tires on the Venetian told the Ketchums the factory – installed extended valve stems caused the flat tires.

168.   The Ketchums now needed to replace the rims for the replaced tires, replace the Good Year tires with Michelin tires that were the proper size, and the extended valve stems.

169.   On June 30, 2020, Mr. Ketchum telephoned the Camping World toll – free number the company has on its website that the company holds out as being to Marcus Lemonis' office to report the problem the Ketchums had on June 27, 2020 with the tires.

170.   On July 1, 2020, an employee from the Camping World resolution team whom Mr. Ketchum only knows as "Hannah," called Mr. Ketchum.  Mr. Ketchum sent Hannah pictures of the valve stems, tires, rims, and invoice for the repairs.

171.   On July 9, 2020, eight (8) days later, Mr. Ketchum texted Hannah because Mr. Ketchum had received no response to his concerns about the damage to the rear inner tires and ancillary parts.  Hannah offered to escalate Mr. Ketchum's

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

concerns to the "regional resolution team," which Mr. Ketchum accepted.

However, either Hannah never escalated Mr. Ketchum's concerns as she

promised to do, or she did and the "regional resolution team" never followed

through because Mr. Ketchum received no response to this communication.

172.    On July 9, 2020, Ms. McClure – Rivera telephoned Mr. Ketchum to ask for

photographs of the valve stems, tires, and rims, and a copy of the invoice for the

tire – related repairs.

173.    On July 10, 2020, Mr. Ketchum drove to Camping World Syracuse so Ms.

McClure – Rivera and Mr. Harmath could review and verify the tire – related

damage.  They took photographs and promised Mr. Ketchum they would try to

obtain a reimbursement for the tire – related expenses Mr. Ketchum incurred and

to repair to the tire – related damage.

174.    On July 27, 2020, Mr. Ketchum discovered water continued to leak in the

passenger slide out of the Venetian.  He e – mailed Mr. Tobias, Ms. McClure –

Rivera, Mr. Fassinger, and Ms. Beck, providing photographs showing water

throughout the Venetian.

175.    Mr. Ketchum also declared in this e – mail that "enough is enough!" because he

and his wife had been very patient with Camping World Syracuse in making

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

repairs, but every time Camping World Syracuse told the Ketchums the Venetian is repaired, it really wasn't.

176.   He also asked Ms. McClure – Rivera again about repairing the tire – related damage and reimbursing him the money he spent to repair that damage.

177.   On this same date, Ms. McClure – Rivera responded to Mr. Ketchum's e – mail. She asked Mr. Ketchum when he would be back in the Syracuse area so Camping World Syracuse could finish repairs, including the leak(s).

178.   On this same date, Mr. Ketchum and Ms. McClure – Rivera agreed Mr. Ketchum would drop the Venetian off at Camping World Syracuse for repairs.  However, Ms. McClure – Rivera never responded to Mr. Ketchum's inquiry about the repair reimbursement or repairing the tire – related damage.

179.   On July 28, 2020, Mr. Tobias telephoned Mr. Ketchum.  Mr. Tobias asked why the Ketchums needed to take the Venetian back to Camping World Syracuse to discuss the repair list again.

180.   Mr. Ketchum responded that he has no idea why he needed to do this and exasperatedly said to Mr. Tobias that all Mr. Ketchum seemed to do when he took the Venetian to Camping World Syracuse was discuss the repair list.

181.   Mr. Tobias then asked Mr. Ketchum during this call whether the Ketchums would be willing to go to Camping World Syracuse to pick up parts Thor had

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

shipped to that location for repairs to the Venetian, then bring those parts with the Venetian to Thor's factory in Wakarusa, Indiana.  Mr. Ketchum agreed to do so.

182.    On July 31, 2020, Mr. Ketchum drove the Venetian to Camping World Syracuse. He picked up all the parts that had arrived at Camping World Syracuse from Thor for his vehicle.

183.    On August 1, 2020, Mr. Ketchum drove the Venetian to Thor's factory in Wakarusa, Indiana.  Mr. Albanese at Thor told Mr. Ketchum the Venetian repairs should take "a couple of weeks."  Mr. Ketchum understood this representation to mean that all repairs to the Venetian would be completed and the Venetian could be used as it had been designed to be used (*i.e.*, would pass without objection in the trade).

184.    Mr. Ketchum also told Mr. Albanese that Thor had approximately thirty (30) days from August 1, 2020 to complete the repairs before the Ketchums began a planned trip to Colorado using the Venetian.

185.    On August 3, 2020, Mr. Ketchum drove back to Central New York State in a rental vehicle he picked up the prior day.

186.    On August 20, 2020, Mr. Ketchum e – mailed Mr. Albanese at Thor to ask for a status update on the repairs.  Mr. Albanese responded that Thor could not find

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

the bathroom leak and was still missing parts to complete the other repairs, and that Camping World Syracuse would have to address the tire – related damage.

187.   Upon information and belief, Mr. Ketchum learned for the first time in this e – mail that Thor could or would not assist him with the tire – related damage.

188.   On August 21, 2020, Mr. Ketchum e – mailed Ms. McClure – Rivera and Ms. Beck at Camping World Syracuse and Mr. Albanese, Mr. Tobias, and Mr. Chris Furco at Thor about the tire – related damage from June 27, 2020.

189.   However, on this same date, Mr. Albanese e – mailed Mr. Ketchum to tell Mr. Ketchum that Freightliner and Good Sam Enterprises, LLC (doing business as Good Sam Roadside Assistance) instead of Camping World Syracuse, would address the tire – related damage.  Mr. Albanese further told Mr. Ketchum that Ms. McClure – Rivera could provide Good Sam's contact information so Mr. Ketchum could discuss the tire – related damage with Good Sam.

190.   On August 21, 2020, Mr. Ketchum telephoned TRE and spoke with Mr. Brian Slick, a TRE Service Writer, to discuss the tire – related damage.  Mr. Slick told Mr. Ketchum that he must speak with other people about how or whether TRE could solve the tire – related damage problem for Mr. Ketchum, but that Mr. Slick would follow – up with Mr. Ketchum.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

191.    On August 24, 2020, Mr. Ketchum e – mailed Ms. Beck, Mr. Fassinger, and Ms. McClure – Rivera at Camping World Syracuse, and Mr. Tobias at Thor to remind them it had been forty – two (42) days since Camping World Syracuse promised Mr. Ketchum it would help him solve the tire – related damage problem.

192.    On August 27, 2020, the Ketchums traveled to Wakarusa, Indiana to pick up the Venetian from Thor's factory.  This represented twenty – nine (27) days the Venetian was out of service undergoing repair.

193.    On August 28, 2020, Mr. Albanese and Mr. Ketchum discussed the Venetian's satellite television problem at the Thor facility.  Mr. Albanese told Mr. Ketchum that the Ketchums had to purchase a Dish satellite television system to make the satellite television work in the Venetian, and that Camping World Syracuse had lied to the Ketchums about the satellite television.

194.    On August 31, 2020, Mr. Slick e – mailed Mr. Ketchum.  In this e – mail, Mr. Slick confirmed that Freightliner installed the valve stems that caused the tire – related damage to the Venetian.  He also said he needed Mr. Ketchum to provide a copy of the invoice for the tire – related repairs before Freightliner could reimburse the Ketchums for those repairs.

195.    On September 2, 2020, Mr. Ketchum e – mailed the invoice to Mr. Slick.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

196.   On that same date, Ms. McClure – Rivera telephoned Mr. Ketchum to tell Mr. Ketchum she would speak with Good Sam Roadside Assistance about reimbursing Mr. Ketchum for the tire – related repairs.

197.   On September 3, 2020, Mr. Bob Coon, a TRE Service Manager e – mailed Mr. Ketchum.

198.   In this e – mail, Mr. Coon told Mr. Ketchum that Freightliner would reimburse Mr. Ketchum only $1,285.00 of the $1,551.52 because that was all the reimbursement Freightliner's guidelines permitted.  Mr. Coon also told Mr. Ketchum that if Mr. Ketchum was not happy with that reimbursement amount, then Mr. Ketchum could contact Freightliner Custom Chassis directly to discuss it with them.

199.   On September 11, 2020, Mr. Ketchum drove the Venetian back to Thor's factory in Wakarusa, Indiana to try once again to repair the Venetian's leaks.

200.   During this trip, Thor helped Mr. Ketchum to acquire the satellite television equipment, but Mr. Ketchum installed that equipment himself because Thor was closed for the day when Mr. Ketchum received that equipment.

201.   On September 12, 2020, Mr. Ketchum left Wakarusa, Indiana with the Venetian. However, not only were the leaks not repaired, but also an antenna on top of the Venetian had broken off while in Thor's possession.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

202. On September 14, 2020, Mr. Ketchum e – mailed Ms. McClure – Rivera to ask for a status update on the tire – related damage reimbursement. Ms. McClure – Rivera replied she had yet to hear back from Good Sam Roadside Assistance.

203. On September 21, 2020, Mr. Ketchum e – mailed Ms. McClure – Rivera to remind her of the still outstanding repairs, to ask her about the status of the tire – related damage reimbursement and tire replacement, and to tell her about the ongoing water leaks, new problems the Ketchums were experiencing with the Venetian, with photographs, the engine had started leaking oil, and they needed to put two (2) gallons of distilled water in the batteries.

204. On September 24, 2020, Mr. Ketchum e – mailed Ms. McClure – Rivera to ask for an update on the tire replacement and reimbursement for the tire – related damage, reminding her it had been almost three (3) months since he first raised this issue with her.

205. On this same date, Ms. McClure – Rivera responded to Mr. Ketchum's e – mail by asking whether he had received a refund from Freightliner; Mr. Ketchum responded to Ms. McClure – Rivera's e – mail by telling her he had not received a refund from Freightliner.

206. On October 7, 2020, Mr. Albanese telephoned Mr. Ketchum. During this call, Mr. Albanese told Mr. Ketchum he had ordered a replacement mid – bathroom

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

window and additional boards for under storage areas.  Mr. Albanese also told

Mr. Ketchum in this e – mail he would be traveling to New York State to replace

parts on the Venetian, and he would let Mr. Ketchum know when that would be.

207.   On this same date, Ms. McClure – Rivera telephoned Mr. Ketchum.  During this

call, Ms. McClure – Rivera asked Mr. Ketchum why parts arrived at Camping

World Syracuse from Thor with Mr. Ketchum's name on those parts.  Mr.

Ketchum explained that Mr. Albanese from Thor would be coming to Camping

World Syracuse to install the parts.

208.   On September 29, 2020, Thor sent Mr. Ketchum a survey.  Mr. Ketchum

completed and returned that survey to Thor.

209.   On January 5, 2021, Mr. Phifer e – mailed Mr. Ketchum.  In this e – mail, Mr.

Phifer told Mr. Ketchum that he wanted to assist Mr. Ketchum to complete the

repairs to the Venetian.

210.   On January 7, 2021, Mr. Ketchum responded to Mr. Phifer's e – mail.  Mr.

Ketchum said in this e – mail he was unsure how Mr. Phifer could help the

Ketchums with their problems with the Venetian because Mr. Phifer, Thor, and

Camping World Syracuse have had nine (9) months or longer to solve these

problems with the Venetian, and as of then, had not followed through on their

prior promises to help the Ketchums or failed in their attempts to help the

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

Ketchums solve their problems with the Venetian when Thor, Camping World

Syracuse, Freightliner, TRE, or Good Sam Roadside Assistance tried to help.

211.   On February 8, 2021, Mr. Fassinger e – mailed Mr. Ketchum.  He told Mr.

Ketchum Camping World Syracuse had parts there waiting to be installed on the

Venetian.

212.   Mr. Fassinger also offered Mr. Ketchum a free, twenty – two (22) point inspection

(which Mr. Murray had already told the Ketchums on January 6, 2020 was part

of the transaction anyway, so this offer had no additional value or benefit to the

Ketchums), and a New York State safety inspection (a $10.00 value) on the

Venetian.  Mr. Ketchum accepted Mr. Fassinger's offer.

213.   On March 17, 2021, Mr. Albanese telephoned Mr. Ketchum to discuss the

Ketchums' problems with the Venetian.

214.   Upon information and belief, this telephone call was in response to Mr.

Albanese's October 7, 2020 telephone conversation five (5) months before.

215.   On March 18, 2021, Mr. Ketchum e – mailed Mr. Albanese.

216.   In that e – mail, Mr. Ketchum summarized his March 17, 2021 telephone

conversation with Mr. Albanese.  This summary included, but was not limited to:

a.      Mr. Ketchum confirming with Mr. Albanese that Mr. Ketchum would

drop off the Venetian at Camping World Syracuse on March 21, 2021 so

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

Camping World Syracuse and Thor could finish the repairs to the Venetian; a twenty – six (26) item list of issues Camping World Syracuse or Thor would address, including the tire – related damage reimbursement;

b.  the Venetian being transported to TRE so it could make five (5) of the twenty – five (25) items needing repair; and that

c.  Mr. Albanese and Mr. Ketchum would go over the Venetian together once the repairs were completed to verify the repairs were indeed completed and correct, and that the Venetian would be in the condition it was supposed to be in (*i.e.*, would not pass without objection in the trade) when the Ketchums took delivery of the Venetian.

217.  Mr. Ketchum gave Mr. Albanese until the afternoon of March 20, 2021 to respond to this e – mail if Mr. Albanese disagreed with anything Mr. Ketchum stated in the e – mail, and if Mr. Albanese did not do so, Mr. Ketchum would infer from that lack of response that Mr. Albanese agreed with Mr. Ketchum's e – mail. However, Mr. Albanese never responded to the e – mail.

218.  Between March 21, 2021 and April 16, 2021, after Mr. Ketchum had taken the Venetian to Camping World Syracuse at Mr. Albanese's invitation, Camping World Syracuse neither completed the repair work it (and Thor) again promised

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

to complete nor performed the inspections Mr. Fassinger promised Mr. Ketchum

Camping World Syracuse would perform.  This would be another twenty – six

(26) days the Venetian was out of service and unavailable for the Ketchums' use.

219.   On March 30, 2021, Mr. Ketchum sent breach of warranty notices to Camping

World Syracuse and Thor, respectively.

220.   Each breach of warranty notice informed each warrantor that Mr. Ketchum

considered each warrantor in breach of their respective warranties and included

an itemized list of problems that Mr. Ketchum contended put them in breach of

each of their respective warranties.

221.   Each of these notices also told each warrantor that Mr. Ketchum was giving them

each one (1) final opportunity to cure their respective breaches.  If they failed to

do so, then Mr. Ketchum reserved his right to protect his rights connected to this

purchase.  Copies of these notices are annexed to this Complaint as Exhibit "**3**,"

and incorporated by reference, as if set forth fully herein.

222.   Upon information and belief, TRE told Camping World Syracuse that TRE had

completed the repairs it was supposed to complete on the Venetian.

223.   However, Camping World Syracuse then allowed the Venetian to sit at TRE for

two (2) days.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

224.   The Ketchums then took it upon themselves to pick up the Venetian from TRE. When they received the Venetian back, the passenger side slide out dumped water all over the front and rear of the slide out where it was leaking, and the mid bath window was also leaking, even though these issues were supposedly repaired, and even though the middle bathroom had a new window installed.

225.   On April 22, 2021, Mr. Ketchum and Mr. Albanese met at Camping World Syracuse.  They discussed the ongoing leaks.  Mr. Albanese told Mr. Ketchum the passenger slide out needed a longer seal to stop the leaks and he would order it.

226.   On April 28, 2021, Mr. Ketchum texted Mr. Albanese a photograph showing water still leaking through the middle bathroom window, even though Mr. Albanese had previously told Mr. Ketchum the middle bathroom window had been replaced.

227.   As of this pleading's filing date, none of the warrantors, have cured their respective breaches, despite being given a final opportunity to do so.

228.   In fact, since Mr. Ketchum commenced this case, and before Camping World had been named a party to this case, Camping World Syracuse refused to repair the Venetian anymore.

229.   Freightliner has come closest to curing its breach by reimbursing $1,285.00 of the $1,551.52 Mr. Ketchum spent replacing tires in Ohio.  However, Freightliner still

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

refuses to reimburse Mr. Ketchum any more money than that and has not

replaced the damaged rims.

230.   As of April 30, 2021, approximately seventy – five (75) Plaintiffs besides the

Ketchums have asserted claims since 2013 <u>in this Court alone</u> against the

Defendant alleging violation of the Magnuson – Moss Warranty Act and

violations of other laws related to the manufacture and sale of recreational

vehicles to those consumers.

## CLAIM ONE – BREACH OF WARRANTY

231.   The Ketchums restate and reallege all Paragraphs, *supra*, and incorporate them

by reference, as if set forth fully herein.

232.   Defendants are each sellers and merchants with respect to recreational vehicles

such as the Venetian.

233.   On or about January 16, 2020, the Ketchums purchased the Venetian, which is

built on a Freightliner chassis, from Thor via Camping World Syracuse.

234.   An implied warranty that the goods were merchantable arose by operation of

law as part of the sale of the Venetian to the Ketchums.

235.   Defendants jointly and severally breached the implied warranty of

merchantability because the goods were not in merchantable condition when

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

sold or at any time thereafter and were not fit for the ordinary purposes for which such goods were used as specified in detail in Exhibit "**3**," *supra*.

236. These breaches of the implied warranty of merchantability rendered the Venetian substantially impaired by defects, unable to serve as a modern, comfortable mobile dwelling in which to reside and entertain guests without comfort or embarrassment while traveling on New York State, Indiana, Federal or other state highways, unmerchantable because of inconsistent or erratic performance, as failing to perform as reasonable consumers such as the Ketchums would expect, even if they did take the Venetian on any trips.

237. Similarly, these breaches of the implied warranty of merchantability rendered the Venetian unable to pass without objection in the trade under the contract description because a significant amount of the buying public would object to buying a recreational vehicle such as the Venetian with the defects mentioned *supra*.

238. Alternatively, the Defendants jointly and severally knew or should have known when the Ketchums were purchasing the Venetian that their particular purpose for purchasing the Venetian was to travel cross – country throughout the United States upon their retirement.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

239.   The Defendants jointly and severally also knew or should have known when the Ketchums were purchasing the Venetian that since the Ketchums were purchasing their first recreational vehicle, they must have relied on to their detriment the Defendants' individual or collective skill or judgment in selecting or furnishing a recreational vehicle to meet that purpose.

240.   The Defendants jointly and severally also knew or should have known when the Ketchums were purchasing the Venetian that the Ketchums were relying to their detriment on the Defendants' collective or individual skill or judgment in selecting or furnishing a recreational vehicle to meet their purpose because the Ketchums kept asking Camping World and Thor to provide the promised multi – hour walkthrough and demonstration of the Venetian's features and functions so the Ketchums would understand how to use what they purchased, and believed what Camping World and Thor presented in their marketing materials about its products.

241.   The Ketchums notified Defendants Camping World, Thor, or Freightliner of the various defects in the goods on February 2, 2020, February 20, 2020, February 28, 2020, February 29, 2020, April 23, 2020, June 5, 2020, and June 27, 2020, among other dates.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

242. Because of the Defendants' joint and several breach of the implied warranty of merchantability, the Ketchums have suffered damages of at least $75,000.00, which represented the difference between the value of the goods as delivered and the value they would have had if the goods had been delivered as warranted.

243. The Defendants' joint and several breach(es) also caused the Ketchums the following incidental and consequential damages:

a. $1,551.52 in parts and labor to replace the two (2) rear inner dual tires with tires of a non – matching brand and size;

b. unspecified traveled expenses transporting the Venetian between the Ketchums' home in Oswego and Camping World Syracuse, between Camping World Syracuse and Thor's Wakarusa, Indiana factory, and between the Ketchums' home in Oswego and Thor's Wakarusa, Indiana Factory, for the sole purpose of having Thor or Camping World Syracuse repair the ongoing and never – ending defects in the Venetian.

### CLAIM TWO – MAGNUSON – MOSS WARRANTY ACT

244. The Ketchums restate and reallege Paragraphs, *supra*, and incorporate them by reference, as if set forth fully herein.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

245.   This claim is for the Defendants' joint and several breach(es) of express or implied warranties, as set forth *supra*, and violation of the Magnuson – Moss Warranty Act (15 U.S.C. §§ 2301 *et seq.*).

246.   The Defendants jointly and severally breached their express or implied warranties to the Ketchums without legal excuse, and that breach was unfair or deceptive to the Ketchums.

247.   The Defendants jointly and severally violated the Magnuson – Moss Warranty Act because of their actions previously stated herein and its failure to comply with their warranty obligations to the Ketchums.

### CLAIM THREE – UNFAIR OR DECEPTIVE ACTS AND PRACTICES

248.   The Ketchums restate and reallege Paragraphs, *supra*, and incorporate them by reference, as if set forth fully herein.

249.   This claim is for violation of applicable unfair and deceptive acts and practices laws; specifically, the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24 – 5, or the New York State General Business Law § 349, jointly and severally by the Defendants.

250.   The Ketchums are consumers in accordance with New York State General Business Law § 349 ("GBL 349") and the Indiana Deceptive Consumer Sales Act (*i.e.*, Indiana Code §§ 24 – 5 *et seq.*).

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

251.   Camping World, Freightliner, Good Sam, and Thor conducted trade and commerce in New York and elsewhere within the meaning of GBL 349 at all relevant times material to the Ketchums' claims.

252.   Specifically, Camping World, Freightliner, and Thor are engaged in, among other things, the manufacture or sale of whole or portions of recreational vehicles and the repair services, and products used to make those repairs to those vehicles for the consuming public, including the Ketchums.

253.   Good Sam is engaged in, among other things, the sale and service of Roadside Assistance plans for Recreational Vehicle and Household Vehicle owners in case of roadside breakdowns.

254.   Upon information and belief, Camping World, Freightliner, and Thor dealt with the Ketchums as they would have with any customer contacting Defendants to purchase or to repair part or all of a recreational vehicle.

255.   Upon information and belief, Good Sam dealt with the Ketchums as they would have with any customer contacting Good Sam to purchase or use Roadside Assistance services.

256.   Upon information and belief, the Defendants, in their respective capacities, sold the Venetian and repair services and related products for the Venetian to the

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

Ketchums with standard documents presented to any customer upon an agreement to sell those services to any similarly situated customer.

257. Upon information and belief, the sale of recreational vehicles, repair services and products to make those repairs for recreational vehicles, and roadside assistance services is not unique to these two parties, was not private in nature, or a "single shot transaction."

258. Each of these actions was consumer-oriented and involved misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

259. Upon information and belief, Defendants' joint and several conduct had an impact on consumers at large who would have also been in the Venetian or also on New York State or federal highways in New York State if the Ketchums operated the Venetian in the condition it was in upon delivery.

260. The Defendants jointly and severally committed 1 or more of the following unfair or deceptive acts or practices, which remain uncured, including, but not limited to:

a. breach of express or implied warranties;

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

b.      Magnuson – Moss Warranty Act violations;

c.      violation unfair or deceptive acts and practices under applicable consumer protection statutes;

d.      representing the subject of a consumer transaction has performance, characteristics, accessories, uses, or benefits, the subject does not have and which the supplier knows or should reasonably know the subject does not have;

e.      failing to remedy defects in a warranted vehicle within a reasonable number of attempts;

f.      failing to remedy defects in a warranted vehicle within a reasonable amount of time;

g.      failing to honor a request to take the vehicle back, to rescind, or to cancel the sale and warranty transaction within a reasonable amount of time;

h.      including one (1) or more unconscionable terms in the Thor warranty;

i.      delaying or stalling in the performance of a legal obligation;

j.      representing defects have been repaired when they have not been repaired;

k.      Camping World violating the Truth In Lending Act (*i.e.*, TILA), the Equal Credit Opportunity Act (*i.e.*, ECOA) (against Mrs. Ketchum), and the New

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

York State Motor Vehicle Retail Installment Sales Act (*i.e.*, MVRISA or

Personal Property Law Sections 301 – 316) in its handling of the

Ketchums' loan to purchase the Venetian;

l.    Freightliner manufacturing a motor vehicle chassis with defective factory

– installed extended valve tire stems that caused the dual inner tires to go

flat and not disclosing that to the Ketchums;

m.    Freightliner failing to disclose to Mr. Ketchum until he needed

reimbursement that it would only reimburse Mr. Ketchum for expenses

incurred to repair faulty Freightliner parts based on unpublished,

arbitrary and capricious guidelines;

n.    Good Sam demanding Mr. Ketchum pay over $1,551.52 to obtain

emergency roadside assistance when the Venetian's tires flattened in June

2020;

o.    Camping World repeatedly promising to help the Ketchums obtain

reimbursement for the emergency repair expenses but never following

through on those promises;


**WHEREFORE**, the Plaintiffs demand judgment against the Defendant as this

honorable Court deems just, proper, and lawful, alternatively as follows:

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

**PRAYER FOR RELIEF**

a)      On each applicable claim, statutory and other damages, remedies, and relief as this honorable Court deems just, proper, and lawful for more than $50,000.00, and in such amount as may be proven at trial;

b)      On each applicable claim, statutory and other damages, remedies, and relief as this honorable Court deems just, proper, and lawful for each violation that may be proven at trial;

c)      On each applicable claim, damages, or treble damages, whichever is greater, and other damages, remedies and relief as this honorable Court deems just, proper, and lawful for each violation that may be proven at trial;

**ALTERNATIVE PRAYER FOR RELIEF**

d)      Alternatively, to the prayer for damages set forth above, rescission of the contract, plus statutory remedies, and relief this honorable Court deems just, proper, and lawful, for each violation which may be proven at trial;

e)      Plus, on each claim, expenses of suit and litigation, interest from the date the contract was consummated, and an Order finding the Ketchums to have rescinded the transaction or to have revoked acceptance, reasonable attorney fees, plus all costs, and all other legal and equitable relief deemed necessary and just.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims and issues.

/s/ *Russell W. Dombrow*

**RUSSELL W. DOMBROW, Esquire**
New York State Attorney Registration No. 4847661
**DOMBROW LAW FIRM**
Attorney for Plaintiffs
499 South Warren Street, Suite 405
Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709
Facsimile:   (315) 409 – 7705
E – Mail:    Russell@DombrowLawFirm.com

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM